IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-CR-189-E |
| | § | |
| ROBERT WILSON KING, | § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

A grand jury issued an indictment charging Defendant Robert Wilson King with one count of making a threat against the president, in violation of 18 U.S.C. § 871(a), and four counts of transmitting interstate communications containing a threat, in violation of 18 U.S.C. § 875(c).  (Dkt. No. 17.)  King now moves to dismiss all five counts of the indictment.  (Dkt. No. 27 ("Mot.").)  The government filed its response (Dkt. No. 30 ("Resp.")), and King has filed a reply (Dkt. No. 35 ("Reply")).  United States District Judge Ada Brown referred the motion to the undersigned magistrate judge for a hearing, if necessary, and recommendation.  (Dkt. No. 32.)

After considering the parties' arguments and applicable authority, the undersigned magistrate judge recommends that the motion be denied.

### I.  BACKGROUND

This case arises out of social media posts King is alleged to have made demanding President Trump's death and promoting violence against Immigration and Customs Enforcement ("ICE") officers.  A grand jury found probable cause to

believe King "knowingly and willfully made a threat to take the life and to inflict bodily harm upon the President of the United States" on February 28, 2025, when, in a "story" posted on Instagram, he said of the president, "I demand he be put to death.  I don't give a fuck anymore, give me the gun I'll pull the trigger myself. Come get me FBI.  Fuck this country."  (Dkt. No. 17 at 1.)

Counts Two through Five of the indictment charge King with transmitting threatening communications in interstate commerce:

- Count Two: King is alleged to have posted on Facebook on March 27, 2025: "If I see ICE agents in my neighborhood I'm opening fire.  It's time to stop being [pxxxxxx] and put the second amendment to work. ICE are not real cops, they are a secret police force with no real legal authority.  Kill them."

- Count Three: King is alleged to have said in a story posted on Instagram on February 27, 2025: "My advice if ICE comes to your neighborhood: SHOOT THEM.  Would you rather die fighting back or die in a foreign prison?  USE YOUR SECOND AMENDMENT. NOW IS THE TIME.  I AM SO SERIOUS."

- Count Four: King is alleged to have said in a story posted on Instagram on February 30, 2025: "Just wanna double down on what I said the other day: if ICE comes to your neighborhood, fucking shoot and kill them.  Nor mercy for the Gestapo.  And if I find out that anyone from family I cut off is stalking my page or someone is feeding information about what I post to, well, anyone, I will find you and there will be hell to pay."

- Count Five: King is alleged to have said in a story posted to Instagram on April 1, 2025, "Tripling down and saying shoot those fuckin' ICE agents dead.  No real legal authority and you have the right to defend yourself."

(*See* Dkt. No. 17 at 2.)

King seeks dismissal of the indictment prior to trial.  First, he contends that each of the statements for which he stands accused is protected by the First Amendment.  (Mot. at 7.)  Second, he argues that Counts Three, Four, and Five should be dismissed on the independent basis that they do not allege a threat.  (*Id.*)

## II.  LEGAL STANDARDS

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment for "failure to state an offense."  A district court may only dismiss an indictment before trial if "the infirmity in the prosecution is essentially one of law."  *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).  A motion seeking dismissal questioning the constitutionality of a statute is a challenge to the indictment under this provision.  *United States v. Robinson*, 680 F. Supp. 3d 737, 738 (N.D. Tex. 2023).  When assessing an indictment, "the court . . . take[s] the allegations of the indictment as true . . . to determine whether an offense has been stated."  *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998).

## III.  ANALYSIS

**1.    A jury could find that King's statements are true threats that are not protected by the First Amendment.**

**A.    Count One**

King first argues that each of the five statements underlying a count in the indictment is protected under the First Amendment.  (Mot. at 9-19.)  The parties agree that the First Amendment does not shield "true threats," (*see* Mot. at 9; Resp. at 3), as they "lie outside the bounds of the First Amendment's protection,"

*Counterman v. Colorado*, 600 U.S. 66, 72 (2023).  True threats are "'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'"  *Id.* at 76 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)).  In contrast, speech—even unpleasant or offensive speech—that is simply hyperbole, satire, or politically unpalatable falls within the ambit of the First Amendment's protection.  *See Watts v. United States*, 394 U.S. 705, 708 (1969); *Bailey v. Iles*, 87 F.4th 275, 283 (5th Cir. 2023); *see also United States v. Jubert*, 139 F.4th 484, 490 (5th Cir. 2025) ("'True' delineates the speech at issue from jest or hyperbole.").

"Speech is a true threat and therefore unprotected if an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm."  *Jubert*, 139 F.4th at 490 (quoting *Porter v. Ascension Par. Sch. Bd.*, 393 F.3d 608, 616 (5th Cir. 2004)).  It is not imperative that the speaker intend to carry out the threat.  *Id.*  "The existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the receiving end."  *Id.* (quoting *Counterman*, 600 U.S. at 74).  "True threats subject individuals to fear of violence and to the many kinds of disruption that fear engenders."  *Id.* (quoting *Counterman*, 600 U.S. at 74).  When differentiating between protected speech and true threats, "context is critical."  *Bailey*, 87 F.4th at 285.

Count One charges King for "demand[ing]" that President Trump be "put to death" and stating, "[G]ive me the gun I'll pull the trigger myself."  (Dkt. No. 17 at 1.)  In his motion, King provides a screenshot of the post in which he stated "I don't

give a fuck anymore, give me the gun I'll pull the trigger myself.  Come get me FBI.

Fuck this country." (Mot. at 4.)  One minute later, he followed with another

comment: "It seems clearer than ever to me that our current sitting president is a

pawn of the Russian government.  So as a traitor to our country and interests I

demand he be put to death." (*Id.*)

King argues that the statements in the post are protected by the First

Amendment.  He portrays the statements as expressing a "willingness to perform the

services of an executioner under the hypothetical condition of President Trump being

administered capital punishment for treason as a Russian agent." (Mot. at 9.)  This

statement, he contends, was "purely fantastical and political" and "predicated on a

wildly implausible conditional scenario" that was "broadcast indiscriminately onto

the internet[.]" (*Id.*)

The undersigned concludes that a reasonable jury could find that King's

statements were a serious expression conveying an intent to commit an act of

unlawful violence—i.e., a true threat.  The statement itself clearly demands that the

president be executed and expresses King's desire to do so.  A listener might infer

King's seriousness from his invitation for the FBI to "come get" him, as it manifests

an awareness of the legal ramifications of the statement.  *See United States v. Sheikh*,

___ F.4th ___, 2026 WL 92173, at *1 (7th Cir. Jan. 13, 2026); *cf. United States v.

Fratus*, No. CR 20-270, 2021 WL 3145732, at *4 (E.D. Pa. July 26, 2021).  King did

not use conditional language or qualify his "demand" for President Trump's death

on the occurrence of any other event, such as conviction after a trial or capital punishment imposed after all the typical legal procedures.  Rather, King stated as a factual matter that the president was a traitor and invited someone to give him a weapon to effect a death penalty himself.

King nonetheless characterizes the statement as conditional, on what he does not specify.  Even reading into the statements an implication that he was willing to impose capital punishment if President Trump was convicted of treason or if someone supplied him with a firearm, such modification of his statement would not preclude a reasonable jury from finding that it was a true threat.  In *United States v. Howell*, 719 F.2d 1258 (5th Cir. 1983), a hospitalized person stated that he had a revolver and, if released, he would travel to Washington and kill the president.  *Id.* at 1260.  Days later, the defendant said that he felt the same and would shoot the president if he could get away with it.  *Id.*  Conditioning his intent to kill the president on his release from the hospital or being able to get away with it did not prevent the Fifth Circuit from determining that the statements were true threats.

King, using clear and unequivocal language, demanded the death of the president and stated that he "[wi]ll pull the tigger" himself.  Considered in context, the undersigned concludes that this is not a case in which the charged statement is so clearly protected by the First Amendment that the Court may hold, as a matter of law, that the statement is not a true threat.

### B.    Count Two

Count Two charges King with making an unlawful threat by posting that he would "open[] fire" if he sees ICE agents in his neighborhood, noting that it is "time . . . to put the second amendment to work," and, of ICE, saying, "Kill them." King asserts that this, too, is political hyperbole and is conditional.  (Mot. at 12-13.)

The Court is not required at this stage to accept King's ipse dixit that the charged statement is political hyperbole.  Considering the statement and the available context, a reasonable jury could find that the statement is a true threat.  Based on the available information, this is not a circumstance in which King was involved in a political rally and made what likely was a flippant remark that was met by laughter from listeners.  *See Watts*, 394 U.S. at 706–07.  King's statement that he would kill ICE officers if he saw them is not clearly political and could be considered a true threat.  *See United States v. Dierks*, 978 F.3d 585, 589–90 (8th Cir. 2020); *see also United States v. Bellrichard*, 994 F.2d 1318, 1321–22 (8th Cir. 1993).

Similarly, King's use of conditional language does not necessarily bring his statement under the protection of the First Amendment.  To the extent King can been viewed as qualifying his intent to kill ICE agents, it was that he conditioned it on the mere presence of ICE agents in his neighborhood.  He compares to *United States v. O'Dwyer*, 443 F. App'x 18 (5th Cir. 2011), but his circumstances are far different from those of a man who vaguely mused about how others might feel if he did not take medications and became homicidal.  *See id.* at 20; *see also Jubert*, 139

F.4th at 491–92 (distinguishing *O'Dwyer* from case involving online posts suggesting harm to individuals).  A jury can consider the particular words King used—and, specifically, their conditional nature—when assessing whether this statement conveyed a serious threat to impose violence on others.  *See Counterman*, 600 U.S. at 74.  But the fact that he used conditional language does not insulate it from being considered a true threat.  *See United States v. Sutcliffe*, 505 F.3d 944, 951 (9th Cir. 2007) ("While the conditional nature of a statement may be a factor in determining whether it constitutes a true threat, conditional language is not dispositive." (citation omitted)); *see also United States v. Hoffman*, 806 F.2d 703, 711 (7th Cir. 1986) ("[T]he conditional nature of a statement does not make the statement any less of a 'true threat' simply because a contingency may be involved.").

King also contends that the statement that is the subject of Count Two is protected speech because it was communicated broadly online and "was not intended to address any individual ICE agents."  (Mot. at 14.)  That King did not direct his statements to any particular officer does not mean that his statement is protected as a matter of law.  *See Virginia*, 538 U.S. at 359 ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual *or group of individuals*." (emphasis added)).  In *United States v. Perez*, 43 F.4th 437 (5th Cir. 2022), the Fifth Circuit affirmed a defendant's convictions under 18 U.S.C. § 1038(a)(1) after he posted that he paid a COVID-positive person to lick everything at two San

Antonio grocery stores.  The court rejected Perez's argument that his posts were not true threats because he did not specify any persons or groups in his statements.  *Id.* at 443 ("Neither is Perez saved by the fact that his posts did not name 'a particular individual or group of individuals.'" (citation omitted)).  His posts "described actions that would have placed employees and potential shoppers at two grocery stores at risk."  *Id.*  By contrast, King did describe a particular group of individuals—ICE agents.  A listener could readily discern King's intent to commit violence this group.  *See United States v. Stevens*, 881 F.3d 1249, 1255 (10th Cir. 2018) (concluding that "messages of deadly action" directed at Tulsa police officers generally qualified as true threats).

Based on the available context at this stage of proceedings, the undersigned cannot conclude that the statement charged in Count Two is protected by the First Amendment.

### C.    Counts Three, Four, and Five

The undersigned considers the statements charged in Counts Three, Four, and Five together, both because King briefed them collectively and because their content naturally ties them together.  The indictment alleges in Count Three that, on March 27, King posted "advice" to shoot ICE agents if they appear in viewers' neighborhoods.  Count Four alleges that, three days later, he "double[d] down" on that statement and said that "if ICE comes to your neighborhood, fucking shoot

them and kill them."  According to Count Five, King posted the following day that he was "[t]ripling down and saying shoot those fuckin' ICE agents dead."

In his central constitutional challenge to these counts, King argues that the statements cannot be true threats because they were not directed to specified others who were ready to take action on them but were instead broad calls for resistance against ICE directed to no one in particular.  (Resp. at 16-17.)  But his statements are not categorically protected by the fact that he broadly transmitted his statement to everyone who could see his social media posts and did not specifically target identified listeners.  Like the conditional language addressed above, a jury can consider that King aired the statements "broadly to the [social media] world" (*see* Mot. at 14) when assessing whether the statements were a true threat or were instead idle keyboard advocacy or political catharsis.  But a jury could find that King's clear and repeatedly amplified statements to kill ICE agents were true threats.  *See United States v. Wheeler*, 776 F.3d 736, 744 (10th Cir. 2015) (declining to draw bright-line rule that "exhortations to unspecified others to commit violence cannot amount to true threats," as the assessment whether a statement is a true threat is "a fact-intensive inquiry" (internal quotation marks omitted)).  At this stage of case, the undersigned cannot conclude that King's statements fall within the First Amendment's protections.[1]

---

[1] King also challenges Count Four as failing to charge a true threat with respect to his statement that there would be "hell to pay" if he learned someone was "feeding information" about his posts.  (*See* Mot. at 17-18.)  The government, in response, does not

**2.      Counts Three, Four, and Five charge offenses under 18 U.S.C. § 875(c).**

King separately argues that Counts Three, Four, and Five should be dismissed because each one fails to charge an offense under § 875(c).  The statute, in relevant part, prohibits "transmit[ing] in interstate or foreign commerce any communication containing any . . . threat to injure the person of another."  18 U.S.C. § 875(c).  King argues that these counts must be dismissed because they "contain no actual threats by Mr. King, but instead advocacy that some unnamed others should take up arms against the perceived illegal activities of ICE agents."  (Mot. at 19.)  King argues that encouraging others to commit violence against ICE agents might implicate another offense—such as one defined in 18 U.S.C. § 373(a)—but it cannot violate § 875(c).  The government argues that King's statements go beyond merely encouraging others to take action against ICE agents.  (Resp. at 12-14.)

King's argument implies that the Court must determine whether the charged statement is better categorized as a threat or incitement.  That is not so.  *See United States v. Hunt*, 82 F.4th 129, 137 (2d Cir. 2023).  In *Hunt*, a defendant was convicted for making a threat after he made an online post urging viewers to kill members of Congress and said he would do the same.  *See id.* at 131.  On appeal, he argued the evidence was insufficient to show he made a threat because it was instead a

---

specifically defend this language as a threat.  In part based on the absence of government argument, the undersigned reads Count Four as charging the transmission of a communication containing a threat against ICE officers that includes the additional comment for context to establish that the charged threat is a true threat.

-11-

statement inciting others. *Id.* at 131, 137. The Second Circuit rejected "[s]uch a binary sorting," noting that "the offense elements the government must prove are determined by the crime actually charged." *Id.* at 137. Here, the government has charged King under § 875(c), and the salient question is whether the indictment charges King with transmitting statements that contain a threat. It does.

This is illustrated by *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013). In that case, a person upset by a Seventh Circuit decision voiced his outrage and wrote that the three judges who participated in the decision should be killed. *Id.* at 414. Included in his tirade against the decision and the court, the poster said, "Let me be the first to say this plainly: These Judges deserve to be killed." *Id.* at 415. Continuing, he referred to the murders of family members of a Chicago judge who had ruled against a white supremacist organization, citing it as another example of judges intentionally violating the Constitution, and suggested that other judges will act similarly if these were allowed to live. *Id.*

Turner argued that the evidence of guilt for making a threatening statement was insufficient because he used the passive voice—saying the judges "deserved to be killed" and that other judges will act similarly if these were "allowed to get away with this by surviving." *Id.* at 422. That is, "he never explicitly wrote" 'I will kill them.'" *Id.* The Second Circuit acknowledged that syntax is relevant when considering whether a statement is a threat, *see id.* at 423, but it reiterated that "rigid adherence to the literal meaning of a communication without regard to its reasonable

connotations derived from its ambience would render the statute powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat.'" *Id.* at 422 (quoting *United States v. Malik*, 16 F.3d 45, 50 (2d Cir. 1994)).

Here, the government alleges that King expressed his own intention to kill ICE agents that he sees and then, on three occasions, expressed that everyone else should similarly kill ICE agents in their neighborhoods.  Based on the evidence the government presents at trial, it is possible that a jury could find that the statements charged in Counts Three, Four, and Five convey to a listener that King expressed a serious intent to kill ICE officers.  *See Jubert*, 139 F.4th at 490; *see also United States v. Doggart*, 906 F.3d 506, 511 (6th Cir. 2018).

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendant's Motion to Dismiss the Indictment (Dkt. No. 27) be **DENIED**.

**SO RECOMMENDED** on February 2, 2026.

 

 

_____

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

-13-

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).